# PEOPLE v. SULLIVAN.

## No. 20,091; November 19, 1885.

### 8 Pac. 520.

**Homicide—Admissibility of Declarations of Deceased.**—In a prosecution for murder, the admission of declarations of deceased, made after receiving the injury, will not warrant a reversal if they are not calculated to prejudice the defendant, although they are not properly dying declarations, nor part of the res gestae.

**Homicide—Expert Testimony as to the Nature of Wounds.**—A witness who testifies that he has had experience with wounds, and is able to tell from seeing them what they were made with, though not a professional expert, may testify as to whether, in his opinion, a wound was inflicted with a dull or sharp instrument.

**Criminal Trial—Refusal of Instructions Substantially Given.**—It is not error to refuse to give an instruction if the same has already been given in other instructions.

APPEAL from Superior Court, County of Fresno.

Campbell &.Hinds for appellant; E. C. Marshall, attorney general, for respondent.

MORRISON, C. J.—The defendant was convicted of the crime of murder in the second degree, and adjudged to suffer imprisonment therefor the term of twenty-five years. On this appeal he makes the following points:

(1) The court erred in admitting the declaration of deceased. (2) The court erred in admitting the testimony of H. J. White, who claimed to be an expert, as to whether the wound had been inflicted with a dull or sharp instrument. (3) The court erred in refusing to give an instruction asked by the defendant, upon the hypothesis that his testimony was true.

1. The following is the testimony objected to under the first alleged error:

"Counsel for the people asked the following questions, upon which the court made the ruling that follows: Question. Did he (deceased) say anything about sending for a doctor while in that condition? Answer. Yes; I will tell you. Q. Just state what he said about sending for a doctor. Mr. Hinds, Counsel for Defendant: We object to it on the ground that it is incompetent and not admissible as a dying declaration, or as a part of the res gestae. Mr. Harris (for the People): We want to show that the deceased asked them if they had sent for a doctor, and they said no, but they would; and he said it was no use—they couldn't do him any good. We want to establish the foundation for introducing other declarations. Does the court admit the question? Court: Yes. Mr. Hinds: We take an exception. Mr. Harris: State what he said about sending for a doctor, first. A. He asked if we sent for a doctor. He was told no, but there would be a doctor there as soon as possible. Says he, 'I don't think it is necessary; I don't think a doctor will do me any good.' Q. Did he say anything else in that conversation? Counsel for Defendant: We object to any declarations, on the ground that they are incompetent, not dying declarations, or a part of the res gestae. Court: Same ruling and same exception. Q. Go ahead. A. He asked if he was hurt. He was told he was. Q. How he got hurt? A. He was not told how he got hurt. And then he says, 'Have you sent for a doctor?' They said there would be a doctor there as soon as we could get him there. He says, 'I don't think it is necessary, because I don't think he could do me any good'; and then asked if we had any morphine, and they said no. He died about an hour and a half—about two hours, I guess—after he said these words. Q. He asked how he got hurt? A. Yes, sir."

Even if it be conceded that the foregoing testimony was improperly admitted, there is nothing in it calculated to prejudice the defendant, and if error was committed by the court in admitting it, it was error without injury.

2. The second alleged error relates to the testimony of H. J. White. The witness, after fully describing the wounds found on the person of the deceased, and after testifying that he had had experience in seeing very frequently cut wounds, and was well acquainted with wounds made with a sharp instrument, and blunt ones also, said: "I have been

here since 1849, and have seen a great deal of this kind of work. From my experience I am competent to tell from seeing a wound what it was made with.'' He was then asked by the counsel for the people as follows:

''Mr. Harris: Did that wound [meaning a wound he had described] have the appearance of being done by a sharp instrument or a dull instrument? S. J. Hinds, Counsel for Defendant: We object to the testimony on the grounds—First, that he is not shown to be a professional expert on wounds; second, that, granting that he is an expert on wounds, it is incompetent for a man looking at a wound to give his opinion as to how it was caused, whether he speaks professionally or otherwise; he can state the facts, but he can't state his opinion. The Court: The court will overrule the objection. Mr. Hinds: We except.''

In answer to the question the witness stated that the wound had the appearance of being done with a dull instrument. The same witness testified to having found blood and gray hairs on the blunt end of the ax found near the place of killing—that is, the hairs were found on what was called the pole of the ax, and the blood on the handle—and the wound, being testified to, was located by witness as having been found on the head of deceased, who had black and gray hair.

We do not see, in view of all the circumstances in evidence in the case, how the defendant could have been injured by the testimony complained of, for he made a full statement of the facts attending the homicide, between which statement and the testimony of White there is no conflict. But we are of opinion that the witness White was a competent witness in respect to the matter on which he testified, and for that reason there was no error in admitting his testimony.

3. The third point presents a more material and important question, and it challenges the action of the court in refusing to give an instruction asked by the defendant, as follows:

''If you have in your minds a reasonable doubt as to whether defendant's story is true or false—that is, if you are not satisfied that it is false—then his story shows he acted in protecting himself from great bodily harm, or that his position or surroundings were such as to excite in the mind of a reasonable person fear that his life or body was in great

danger, then you should not hesitate to acquit him, and give him the benefit of that doubt.''

The foregoing instruction, as we understand it, does not contain a correct statement of the law; and if it did, the matter covered by the question of self-defense was embraced in other instructions given the jury by the court.

After an examination of all the instructions in the case, we think the law was fully and correctly stated on the trial, and, finding no substantial error in the record, the judgment and order are affirmed.

We concur: Myrick, J.; Thornton, J.